UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
| MICHAEL MORONEY ) | Case No. 04-12879-SSM |
| ) | Chapter 13 |
| Debtor ) | |

**MEMORANDUM OPINION AND ORDER**

A hearing was held in open court on April 27, 2005, on objections to confirmation of the debtor's plan by the chapter 13 trustee and the Internal Revenue Service. The trustee's motion to dismiss the case was also scheduled for hearing at the same time. The debtor and the Internal Revenue Service were represented by counsel. The trustee was also present at the hearing. Although the trustee's objection to confirmation was withdrawn in open court, the court took under advisement the Internal Revenue Service's objection to confirmation and the trustee's motion to dismiss the case. For the reasons stated, confirmation will be denied and the trustee's motion to dismiss will be granted.

Background

This is the debtor's second bankruptcy case in this court. Mr. Moroney filed a chapter 7 petition on March 23, 2000, and received a discharge on June 28, 2000 (Case No. 00-11276-SSM). Following the discharge, the debtor successfully moved to reopen the case in order to prosecute an adversary proceeding against the Internal Revenue Service (Adversary Proceeding No. 01-1194). The adversary proceeding centered on whether the debtor could discharge his 1990 and 1992 tax liabilities, even though he was delinquent in his filings for those years. Mr. Moroney submitted income tax statements for these years after the original deadline and after

1

the IRS had already prepared "substitutes for returns." This court granted the IRS' summary judgment motion, and the district court affirmed. The U.S. Court of Appeals for the Fourth Circuit affirmed as well, holding that the income tax forms submitted by Mr. Moroney were "unjustifiably" late, did not constitute "returns," and thus the corresponding income tax liabilities were nondischargeable under § 523(a)(1)(B)(i) of the Bankruptcy Code. *Moroney v. United States (In re Moroney)*, 352 F.3d 902, 907 (4th Cir. 2003). The chapter 7 case was closed on June 12, 2002.

      The debtor filed a chapter 13 petition in this court on July 7, 2004. His schedules reflect $91,600.00 in assets. Of this amount, $90,200 relates to real property in Pennsylvania being held as tenants in common. The debtor's total liabilities are $175,628.10. The schedules indicate that Pennstar Bank has a secured claim of $81,504.80 on the Pennsylvania property. The debtor also scheduled an unsecured, nonpriority debt to the Internal Revenue Service in the amount of $90,000. The only other debt listed is for $4,123.30 owed to American Express. Two proofs of claim were timely filed in this case: one by the Internal Revenue Service asserting a secured claim for $6,547.60 and an unsecured nonpriority claim for $104,509.29; and the other by Pennstar Bank indicating a payoff balance of $64,556.33 on the mortgage.

      The debtor filed the chapter 13 plan that is now before the court on March 23, 2005. This is the debtor's sixth amended plan in the case. Under this version of the plan, the debtor proposes to pay $400.00 per month for 52 months, having already paid $2,040.00 to date. The plan states that unsecured creditors would be paid 5.9% of their claims, compared to only 0.14% in chapter 7. The IRS secured claim of $6,547.60 would be paid in full through the plan, although the Pennstar secured claim would be paid outside of the plan. Section A-3 of the plan contains a provision for "additional plan payments" in which the debtor will pay an

2

additional ten percent (10%) of his taxable income for calendar years 2005-08 into the plan to the extent that debtor's taxable income exceeds $12,000 per calendar year. The "additional plan payments" would be made over the twelve-month period of the year after the year in which the "additional plan payment" liability accrues. For 2009, however, the "additional plan payments" would be made over a six-month period. Section A-3 of the plan concludes with the statement "[t]his constitute [sic] all of the disposable income of the debtor during the period of the plan."

Both the chapter 13 trustee and the Internal Revenue Service filed objections to the sixth amended plan. The trustee's objection was based on § 1325(a)(6) of the Bankruptcy Code, arguing that the debtor lacked sufficient income to make the proposed plan payments. At the hearing, however, the trustee withdrew his objection, noting that he had received an amended schedule of monthly expenses that provided for sufficient surplus income to make plan payments. The IRS objected to the plan on two primary grounds: lack of good faith and not devoting all of debtor's disposable income into the performance of the plan.

Section 1325(a)(3) of the Bankruptcy Code requires that the debtor's plan be "proposed in good faith and not by any means forbidden by law." Courts in the Fourth Circuit use a "totality of the circumstances" approach in determining whether a chapter 13 plan was filed in good faith. *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986). Factors to be considered in this analysis include: (1) percentage of proposed repayment, (2) debtor's financial situation, (3) period of time for payments, (4) debtor's employment history and prospects, (5) nature and amount of unsecured claims, (6) debtor's previous bankruptcy filings, (7) debtor's honesty in representing facts, and (8) any unusual or exceptional problems facing the debtor. *Id.* In addition, whether a debt is dischargeable in chapter 13 but nondischargeable in chapter 7 is

3

another relevant factor in the good faith analysis. *Id.* at 153. The debtor has the burden of proving that the plan was filed in good faith. *In re Carpenter*, 318 B.R. 645, 648 (Bankr. E.D. Va. 2003).

The IRS believes that the debtor's plan was not proposed in good faith for a number of reasons. This is the debtor's sixth amended plan, an unusually high number of plans submitted. Relying on testimony gathered from a previous confirmation hearing held on March 9, 2005, the IRS believes it is the only true unsecured creditor in this case. The Pennstar claim, based on the filed proof of claim, is fully secured. The American Express claim amount is dwarfed by the substantially larger IRS unsecured claim, and American Express did not consistently appear on the mailing matrix attached to each proposed plan, leading the IRS to believe uncertainty exists as to whether American Express is a true creditor in this case. The IRS also contends that because this is a single-creditor case, a plan proposing a modest 5.9% payout to one creditor could not have been proposed in good faith. According to the IRS, the only purpose of filing such a plan would be to minimize payout to the Service. As further support for its good faith argument, the IRS points to the debtor's failing to make a single voluntary payment on the Service's claim in the past 12 years.

The Internal Revenue Service's objection to confirmation is also based on disposable income concerns. Section 1325(b)(1) of the Bankruptcy Code states that if an unsecured creditor objects to plan confirmation, then the plan must provide for either payment of the entire unsecured claim amount or the debtor must submit all of his projected disposable income over a 3-year period beginning on the due date of the first plan payment.

According to the IRS, Mr. Moroney has not proposed submitting all of his disposable income into the plan. The IRS points to the fact that Mr. Moroney is a licensed attorney who is

4

not actively practicing law because he has not completed his continuing legal education requirements.  The debtor argues that his attorney license is irrelevant because he has never practiced law, and it would be unfair to expect him to now enter the legal profession without having any experience in legal practice.  The IRS is also critical of Section A-3 of the debtor's plan which provides for "additional plan payments" in the form of 10% of debtor's taxable income for calendar years 2005-08.  The IRS argues that 10% of taxable income is not the same as the debtor's disposable income.  The debtor, on the other hand, defends the 10% provision and argues that the debtor's revised schedule of monthly expenses indicates that his average surplus monthly income is $407.98, of which $400.00 will be paid monthly into the plan.  In addition, the debtor argues that he has used his best efforts in obtaining employment as a consultant for an insolvency firm.

Although the trustee's objection to plan confirmation was withdrawn at the hearing, his motion to dismiss the case for unreasonable delay was taken under advisement.  Section 1307(c)(1) of the Bankruptcy Code permits dismissal for cause, including "unreasonable delay by the debtor that is prejudicial to creditors."  Although § 1325(a)(3) of the Bankruptcy Code requires that a chapter 13 plan be filed in good faith in order to be confirmed, there is no similar requirement that the *case* be filed in good faith.  Still, courts have applied a "good faith" standard to chapter 13 filings when considering whether to dismiss a case under § 1307(c).  *In re Herndon*, 218 B.R. 821, 823-24 (Bankr. E.D. Va. 1998).  As is the case with objections to plan confirmation, courts use a "totality of the circumstances" test in determining good faith. *Id.* at 824.  The movant has the burden of proving that the case should be dismissed.  *Id.*

Discussion

A.

5

The court will first address the Internal Revenue Service's objection to confirmation of the debtor's plan, beginning with the issue of whether the debtor filed his plan in good faith. Several of the *Neufeld* good-faith factors are in the IRS' favor.  First, the debtor proposes a modest 5.9% payout to unsecured creditors. Although the debtor asserts that his plan meets the "liquidation test" under § 1325(a)(4) whereby unsecured creditors in chapter 13 would receive at least as much as they would in chapter 7, the proposed payout rate is still quite low.  Coupled with the fact that the IRS is essentially the only unsecured creditor in this case, a strong inference exists that the plan was filed primarily to minimize payout as to a particular creditor. This "singling out" of a creditor creates a strong inference of lack of good faith.  Second, a review of the debtor's financial situation shows that there was no financial emergency that warranted filing for bankruptcy protection for the second time.  With the exception of his IRS obligation, the debtor had previously discharged his debts through his earlier chapter 7 filing. There is no evidence indicating that the debtor was in dire financial straits that necessitated a chapter 13 filing.  Third, the debtor has not made any voluntary payments on the IRS claim in the past 12 years.  This not only raises serious questions as to whether the debtor intends to repay his obligation to the IRS, it also displays a lack of fair dealing with the Service.  Mr. Moroney received his chapter 7 discharge in June 2000 and did not file his chapter 13 petition until July 2004.  Although the dischargeability of his tax debt was not resolved until the Fourth Circuit's ruling in December 2003, the debtor could have commenced payments to the IRS at that point but instead chose not to.  Over six months passed between the Fourth Circuit ruling and the debtor's chapter 13 filing, with no payment made to the IRS.

Although this subject was not directly addressed at the hearing, the debtor's chapter 13 filing shortly followed the Fourth Circuit's nondischargeability ruling in his chapter 7 case,

6

creating the impression that he was trying to take advantage of the broader discharge provisions of chapter 13 by attempting to discharge the IRS debt through chapter 13. Section 1328(a) of the Bankruptcy Code sets forth which debts may be dischargeable in chapter 13:

> (a) As soon as practicable after completion by the debtor of all payments under the plan ... the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt–
>
> > (1) provided for under section 1322(b)(5) of this title;
> > (2) of the kind specified in paragraph (5), (8), or (9) of section 523(a) ... of this title; or
> > (3) for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime.

The exceptions to discharge provided for in section 1328 do not apply in the present case. Section 1322(b)(5) provides for curing of default on claims, and there are no debts relating to restitution or criminal fines in this case. The debtor's IRS debt was nondischargeable under § 523(a)(1)(B)(i) and not under 523(a)(5), (8), or (9), as specified in § 1322(a)(2). Therefore, based on the broad scope of dischargeability under chapter 13, the IRS debt would be dischargeable under chapter 13 even though it was nondischargeable under chapter 7. This leads to the question of whether the debtor inappropriately filed for chapter 13 relief after obtaining a discharge in chapter 7. This procedure, often referred to as "chapter 20," may be permitted under certain circumstances, but it "ought not to be permitted when the debtor improperly seeks to accomplish indirectly through sequential filings ... that which he cannot achieve directly under each chapter." *In re Taylor*, 261 B.R. 877, 884 (Bankr. E.D. Va. 2001). Additional factors to consider in a "chapter 20" analysis are the proximity in time between the chapter 7 and chapter 13 filings, any change in circumstances between filings, and whether the filings represent an attempt to manipulate the bankruptcy system. *Id.* At first glance, the present case does not appear to be the standard "chapter 20" situation. The debtor received his

chapter 7 discharge in June 2000 and did not file his chapter 13 petition until July 2004. However, one reason for the delay in filing for chapter 13 relief was the resolution of his adversary proceeding against the IRS. The Fourth Circuit did not make its determination of nondischargeability until December 2003. Thus, there was only a six-month gap between the Fourth Circuit ruling and the chapter 13 filing. Although six months is longer than the seven-day gap in *Taylor*, the debtor's actions still raise a strong inference that his primary reason for filing under chapter 13 was to take advantage of that chapter's "superdischarge" provision. If the purpose of such filing is indeed to obtain a superdischarge of a previously nondischargeable debt, denial of confirmation and/or dismissal of the case may be warranted. *In re Stern*, 266 B.R. 322, 327 (Bankr. D. Md. 2001). Here, because the IRS is essentially the single unsecured creditor in the case and is holding a nondischargeable claim, coupled with lack of payments so far on the claim, it appears that a superdischarge is the debtor's primary motive in filing for chapter 13 relief. Therefore, based on all of the factors considered in the discussion above, the court will deny confirmation of the debtor's plan on the grounds that it was not filed in good faith. Because the court will deny plan confirmation based on § 1325(a)(3), it need not consider the IRS' objection on disposable-income grounds.

B.

The court will next address the trustee's motion under § 1307(c)(1) to dismiss the case for unreasonable delay. Although this motion was only briefly addressed at the hearing, presumably the trustee's motion is based on the debtor's numerous plan filings without obtaining confirmation. As noted, the debtor did not file his chapter 13 plan in good faith, and one of the factors taken into account was the nondischargeability of his tax obligations in chapter 7. Applying the same analysis to dismissal of the case, the court concludes that

8

dismissal of the case is appropriate because debtor lacked good faith in filing for chapter 13 relief. First, this is essentially a single-creditor case in which the debtor is attempting to discharge a previously nondischargeable tax debt through the "superdischarge" provision of chapter 13. The chapter 13 filing occurred only six months after the Fourth Circuit's dischargeability ruling. Second, there is no evidence of a financial emergency that would lead the debtor to file for bankruptcy protection. Third, the debtor has not made any payments to the IRS on the claim over the last 12 years. For all of these reasons, the court will dismiss the debtor's chapter 13 case.

There remains the issue of whether the case should be dismissed with prejudice. The trustee has not requested dismissal with prejudice in either his written motion or at the hearing. In determining whether a chapter 13 case should be dismissed with prejudice, the court should consider whether the debtor acted in good faith. *In re Shaheen*, 268 B.R. 455, 462 (Bankr. E.D. Va. 2001). In *Shaheen*, the court dismissed the debtor's case with prejudice to re-file for one year, noting that the debtor's primary motivation in filing for chapter 13 relief was to prevent recovery on a previously nondischargeable debt. *Id.* at 462. The court stated that the debtor "sought to gain an advantage against a single creditor," and that such conduct "undermines the integrity of the bankruptcy system." *Id.* Another chapter 13 case resulting in dismissal with prejudice is *In re Davis*, 239 B.R. 305 (Bankr. D. Md. 1999). In that case, the debtor's single creditor, the Internal Revenue Service, filed a proof of claim based on the debtor's failure to file federal income tax returns. The debtor contended that he was not obligated to pay income taxes, and at the confirmation hearing the court dismissed the case with prejudice for one year. The court pointed out that conversion to chapter 7 would serve no purpose because the tax debt would be almost entirely nondischargeable, and dismissal with prejudice would allow the

parties to "work out their disputes." *Id.* at 306. However, in *In re Herndon*, 218 B.R. 821, 825 (Bankr. E.D. Va. 1998), although the court found that "nominal payment on a potentially nondischargeable claim is evidence of bad faith," it did not dismiss the case with prejudice. The court did note, however, that "any future bankruptcy filing by debtor will be suspect unless there has been a marked change in ... circumstances." *Id.* at n.6. In the present case, this court believes that the *Herndon* approach is appropriate and will not dismiss the case with prejudice. The debtor should be aware, though, that any refiling, particularly if no material change in circumstances has occurred, will be viewed as suspect and may result in dismissal with prejudice.

O R D E R

For the foregoing reasons, it is

**ORDERED:**

1. The Internal Revenue Service's objection to confirmation is sustained.

2. The chapter 13 trustee's motion to dismiss the case is granted.

3. The clerk shall mail a copy of this opinion and order, or give electronic notice of its entry, to the parties listed below.

Date: _____         _____
                                    Stephen S. Mitchell
Alexandria, Virginia                United States Bankruptcy Judge

Copies to:

Michael Moroney
2932 Highland House Villas Ct.
Arnold, MO 63010
Debtor

Thomas F. DeCaro, Jr., Esquire
14406 Old Mill Road, #201
Upper Marlboro, MD  20772
Counsel for debtor

Robert K. Coulter, Esquire
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Counsel for the Internal Revenue Service

Gerald M. O'Donnell
211 North Union Street, Suite 240
Alexandria, VA   22314
Chapter 13 trustee